UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Style Definition:** Footnote Reference

**RICHARD JONES**
4501 23d Parkway
Apt 104
Temple Hills, MD 20748

**Formatted:** Space Before: 6 pt

On behalf of himself and all others similarly
situated,
Plaintiff,

v.

Civil Action No.: 16-2405 (CKK)

**GOVERNMENT OF THE DISTRICT OF
COLUMBIA,**

SERVE:

Mayor Muriel Bowser
Designee Darlene Fields
Civil Litigation Division, Ste 6000 South
441 4th Street, NW
Washington, DC 20001
202-724-6507

And

Attorney General Karl Racine
Designee Darlene Fields
Civil Litigation Division, Ste 6000 South
441 4th Street, NW
Washington, DC 20001
202-724-6507

**Formatted:** Font: Bold

**Formatted:** Space After: 0 pt, Tab stops: Not
at 0.5" + 1" + 1.5" + 2" + 2.5" + 3"

Defendant.

CLASS ACTION

FIRST AMENDED COMPLAINT ~~FOR INDIVIDUAL MONEY DAMAGES AND CLASS
INJUNCTIVE RELIEF~~ AND JURY DEMAND

FILED BY RIGHT

Introduction

1

1.      Mr. Jones files this First Amended Complaint by right under Fed. R. Civ. P. 15(a)(1)(a) because he files the First Amended Complaint within 21 days of the District's filing its motion [10] to dismiss the original complaint.

1.2.      This is an action brought by each of Richard Jones (the "Overdetention Named Plaintiff") on his own behalf and on behalf of the class defined below injured (or presently subject to injury) by the Government of the District of Columbia's recently(the "District's") revived pattern and practice of allowing its Department of Corrections to overdetain inmates, and by the District's deliberate indifference to the effect of the practice of overdetention on the rights of inmates.  To overdetain means holding a detainee or prisoner in a District of Columbia Department of Corrections ("Department of Corrections") facility past midnight of his or her release date, as defined below.  or DOC") facility past 10 pm of the date on which they are entitled to release ("Release Date") (or more than two hours after being ordered released or otherwise becoming entitled to release if the person was a court return), as defined below. The date and time on which a detainee is entitled to release is their Release Time.

3.      Mr. Jones also brings the Over-detention Claim pursuant to the Due Process clause of the Fifth Amendment because District of Columbia statutes create a liberty interest in release by 10 pm on the Release Date per D.C. Code § 24-201.06 and D.C. Code § 24-211.02a and for an inmate ordered released pursuant to a court order within 5 hours of transfer from the custody of the United States Marshals Service into the custody of the Department of Corrections per D.C. Code § 24-211.02a.

2.1.      This is also an action brought by Richard Jones (the "Strip Search Named Plaintiff") on his own behalf and on behalf of a Strip Search Class of individuals who were injured (or presently subject to injury) by the District's conduct in subjecting them to blanket strip searches and visual

2

Formatted: No widow/orphan control, Tab stops:  0.5", List tab + Not at  0.25"

Formatted: No widow/orphan control, Tab stops:  0.5", List tab + Not at  0.25"

body cavity searches (both described below)pursuant to the Department's policy of subjecting all persons committed to the DC Jail of a strip-search regardless of cause after they were returned to a Department of Corrections facilitythe DC Jail and strip-searched after a judicial determination that there was no longer a basis for their detention, other than to be processed for release, and by District's deliberate indifference to the effect of the practice of blanket strip searches and visual body cavity searches on the rights of inmates.

3.5.     Mr. Jones also brings common law over-detention (false imprisonment) and strip-search (invasion of privacy) claims. Mr. Jones timely submitted "12-309" notice to the District pursuant to D.C. Code § 12-309 on behalf of himself and the classes.

4.6.     The Overdetained Named Plaintiff brings this action against the Government of the District of Columbia under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, to enforce the Fourth, and Fifth and Eighth Amendments, and under District of Columbia common law, for injuries suffered by themhim and the class members, because the District overdetained themhim and other members of the class at a Department of Corrections facility.

5.7.     The Strip Search Named Plaintiff brings this action against the Government of the District of Columbia under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, to enforce the Fourth and Fifth Amendments, and under District of Columbia common law, for injuries suffered by themhim, because the District subjected themhim and the class members to the blanket strip searches.

## Jurisdiction and Venue

6.8.     This Court has jurisdiction over the Overdetained Named Plaintiff and Strip Search Named Plaintiff'Plaintiff's § 1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

3

9.      This Court has supplemental jurisdiction over the Overdetained Named Plaintiff and the Strip Search Named Plaintiff's common law claims pursuant to 28 U.S.C. § 1367.

7.10.   Venue is appropriate in this District.  Each of the claims for relief arose in this judicial district.

**Parties**

11.     Plaintiff Richard Jones was over-detained at the DC Jail and was strip searched at the DC Jail without reasonable suspicion after being ordered to be released from custody.

12.     The District Government of the District of Columbia (hereinafter the District of Columbia or the District) is a municipal corporation capable of being sued under D.C. Code § 1-102.

**Factual Allegations**

13.     For over 20 years the District has run a jail system that systemically holds people past their release dates and subjects court returns entitled to release to degrading and unnecessary blanket post release strip searches.

14.     The cause of the over-detentions and illegal post release strip searches of court returns entitled to release was and remains the District of Columbia's maintaining a release system in the DOC which *in toto* simply delays all releases until the system, in its sweet time, and with the resources the government of the District of Columbia chooses provide it, is ready to make releases of inmates from DOC facilities.

15.     Regardless of the lawfulness of its release polices the District implements them in a way that violates the constitutional rights of inmates.

4

16.     The District's system gave great weight to the "*only* societal interests that justify delay [which] are ensuring that prisoners are not released if they have warrants, or detainers, and efficient marshaling of scarce resources" and gave practically no weight to "the prisoner's ***absolute*** right to freedom" in a prompt release. Barnes v. District of Columbia,  242 F.R.D. 113, 117-118 (D.D.C. 2007). The system attaches weight to the governmental interests involved in releases but disregarded the interests of the inmate in a prompt release.

17.     The DOC with the full knowledge of the D.C. Council and the Mayor has blindly followed practices that required release dispositions to be transmitted from the Superior Court to the Records Office at the DC Jail in paper format by hand in the first place, and then the District, especially the DOC, "inefficiently implemented" the procedures in the system for transmitting orders from the courtrooms to the Records Office in ways that caused significant delays and losses in the transmission of the orders.

18.     The DOC's determination to (1) make releases at the DC Jail or and only occasionally at the courthouses, and to process releases (2) on the basis of paper orders (as opposed to docket entries or electronically transmitted orders) (3) hand carried back to the Records Office, and the "inefficiently implemented" procedures in the system for transmitting orders added hours and sometimes days to the release process.

19.     The DOC's "inefficient implementation" of its procedures for making releases added further delay. The DOC runs a paper system for tracking cases and releases and misplaces jackets, misfiles orders, and runs the system manually. The "inefficient implementation" of the District's release procedures is the result of official "acquiescence in a longstanding practice or custom which constitutes the standard operation procedure of the local government entity."

District of Columbia Department of Corrections

5

20.     The District of Columbia Department of Corrections holds prisoners committed by the District of Columbia Superior Court, the District of Columbia District Court, and other agencies, in the Central Detention Facility ("DC Jail"), the Correctional Treatment Facility ("CTF") and at various halfway houses located in the District of Columbia.

21.     Most prisoners held in the custody of the Department of Corrections are either pre-trial detainees, misdemeanants serving short sentences, or parole and probation violators.

### The Inmate Management System

22.     The records office located at the DC Jail ("Records Office") is responsible for administering and maintaining the records, including the judgment and commitment files, of all persons housed at the DC Jail, CTF and the halfway houses.

23.     The Records Office is responsible for ensuring that all persons housed at the DC Jail, CTF and the halfway houses are released according to their Release Dates and Release Times specified in their court orders.

24.     The DOC through its Records Office enforces a policy of treating court return (each person who leaves a DOC facility for court and returns on the same day) as subject to their original commitment order if the court return returns to the Jail or other facility without a release order for each case on which they are being held/

25.     A person may be subject to commitment on more than one case or charge.

### The Overdetention Problem

26.     "Overdetain" means holding a detainee or prisoner in Department of Corrections' custody past the person's Release Time on their Release Date.

27.     "Release Date" for each detainee or inmate is the day on which the person is entitled to be released by court order or the date on which the basis for his or her detention has otherwise

expired.

28.     "Release Time" is the date and time on which a detainee is entitled to release.

29.     "Exit Date" for each detainee or inmate is the day on which the person is actually released from the custody of the District of Columbia Department of Corrections.

30.     The Department of Corrections had a long and documented history of overdetaining detainees and inmates past their Release Dates and Release Times.

31.     The Department of Corrections, in response to class action lawsuits, instituted reforms that ameliorated and for periods eliminated the overdetention problem.

32.     However, based on publically available filing, the Department of Corrections has again begun overdetaining large numbers of inmates.

### The Court Return Strip Search Problem

33.     Prior to late 2000 or early 2001, the Department of Corrections followed a practice under which most inmates taken from custody of the Department of Corrections to court and ordered released by a judicial officer because the charge was no longer pending or because of a change in conditions of release was returned to the DC Jail or CTF for processing for release rather than being released from the courthouse.

34.     In late 2000 or early 2001, the Department of Corrections instituted a policy under which every inmates taken from custody of the Department of Corrections to court and ordered released by a judicial officer because the charge was no longer pending or because of a change in conditions of release was returned to the DC Jail or CTF for processing for release rather than being released from the courthouse.

35.     In August 2005 the Department of Corrections instituted a policy of diverting in-custody defendants ordered released or otherwise entitled to release from the Superior Court of the

District of Columbia to a holding facility on the grounds of DC General Hospital ("MHU") where they would not be subject to a strip search, absent individualized suspicion, while the record review for detainers and warrants and property retrieval was conducted prior to release.

36.     However, the Department of Corrections has been returning some in-custody defendants entitled to release from the courthouses to the DC Jail or CTF and subjecting them to strip searches after a judge has ordered their release without a finding of individual reasonable suspicion.

37.     The DOC is supposed to make releases from the courthouses but it does not reliably do so.

38.     The exact cause of the recent overdetentions and illegal court return strip searches is not known, but the causes, on information and belief, include recurring problems with the DC Jail's computerized inmate population accounting system and the Records Office  and the problems described below.

**Split system connected by a "sneaker network"**

39.     The District, especially the DOC, compounded the inefficiencies inherent in the "split" system by the DOC's solution to the problem of how to communicate data, especially release dispositions, between the two systems.

40.     The DOC's solution, largely dictated by the DOC's longstanding practices by which DOC insisted on making releases based on paper orders hand carried back to the Records Office at DC Jail, and DOC's insistence on making releases from either the DC Jail or MHU, was to set up a "sneaker" network in which orders and other paperwork associated with in-custody defendants traveling to and from the courthouse and the jail was hand carried.

41.     Moreover, the District, especially the DOC, administered the "sneaker" network poorly in

8

**Formatted:** No widow/orphan control, Tab stops:  0.5", List tab + Not at  0.25"

ways that created significant delay in the release process because of the "split" system structure and the inefficient and delay laden manner in which the DOC administered it. The DOC is the agency that has responsibility for processing releases.

42.     Put another way, the DOC is the agency that blocks the releases of court returns entitled to release until the DOC has obtained their release dispositions in the form it wants (paper copies), and transported the "body1" to the place it chooses to make the release (DC Jail, MHU, and as of July 2008 the Superior Court).

43.     The DOC is the agency that has responsibility for obtaining orders for all inmates in its custody so it can make prompt releases.

44.     Once of the major causes of the District's over-detention and court return strip-search problem is that it runs a split system, that is, the DOC sends prisoners to the courthouses for hearings at which the court returns receive paper release or commitment orders, and then the DOC Records Office processes releases based on the paper orders.

45.     Compounding the problem is that each system uses its own database (the Superior Court uses CourtView and the DOC uses JACCS) that cannot communicate directly over an electronic network.

46.     Instead, a "sneaker network" of DOC transport officers transmitting the orders by hand connects the two systems.

---

1 Each court return going to the courthouse is "body" as distinguished from his "paperwork" such as a court order or a "buck slip" or a Form 40 (manifest listing all bodies on a transport vehicle).  Sometimes the body and the paperwork travel separately and sometimes they travel together.  Plaintiffs do not intend any disrespect in using the term "body" as opposed to individual or person.  Body is merely a translation of the venerable Latin term "corpus" (as in "habeas corpus") and is intended to distinguish between the body and the paperwork.

47.     In contrast, the MPD arrest booking database communicates via network with the Superior Court booking system so data about arrestees is transmitted electronically from the MPD system to the CourtView system.

48.     This is both quicker and more error free.

49.     Every release / commitment order issued by the Superior Court or the District Court has to be hand carried from the courtroom clerk by the courthouse Marshals to DOC staff in the courthouse who carry it back to the Records Office with the court returns on the transport vehicles to the Records Office and then re-entered manually into the DOC system.

50.     It is a fundamental premise of data management that every time data has to be re-entered into a system by hand is an opportunity for error.

51.     Despite years of knowing about the problems caused by transmitting papers orders by hand the DOC has refused to engineer a system of electronically transmitting release / commitment data from the courthouses to the Records Office system.

52.     Every release / commitment order issued by a judge is printed out in duplicate, one copy for the court and one copy for the DOC.

53.     The District even refuses to set up a network to link the courtroom computers with the Records Office so that paper orders printed out by the courtroom clerks will print in the Records Office.

54.     Networking printers at remote locations is so simple these days that people can go online and print documents remotely at their local copy/ print center.

<div align="center">DOC runs a paper system for tracking cases</div>

55.     The DOC's Records Office maintains records for each inmate and processes their releases and commitments.

<div align="center">10</div>

56.     The DOC runs a paper system for tracking cases.

57.     Each inmate has a paper hard copy file (their "jacket").

58.     Even though the DOC maintains an electronic inmate management system database (JACCS) each commitment and release requires a review of official hard copy documentation in an inmate's file and the review of hard copy documents provides the primary basis for making release determinations.

59.     The District's Records Office runs the system manually and frequently misplaces jackets, misfiles orders, and fails to process commitments and releases reliably.

### The District's system for handling court returns

60.     Every day that court is in session the District sends inmates to the Superior Court and the District Court for court appearances.

61.     After a court return appears in court the court return is ordered held or released.

62.     Just because a court return receives a single release order does not mean that they are automatically entitled to release.

63.     A court return sent to court on more than charge or case may receive a release order in one case and a commitment order in another.

64.     Similarly, a court return who receives release orders in all cases on which they went to court may be subject to continued detention on other cases or subject to a detainer or a warrant.

65.     And a court return who was convicted and sentenced may also be entitled to release on that case even if they are convicted (e.g., person sentenced to time served or probation only).

11

66.     It is the job of the Licensed Record Examiners ("LIEs or records examiners") in the Records Office to process releases by reviewing an inmate's "jacket" and determining whether an inmate is entitled to release if they received release orders on all the cases on which they went to court or otherwise became entitled to release (e.g., prosecutor dismissed the case, person sentenced to time served or probation only) and there are no other cases on which the person is being held and they are not subject to detainers or warrants.

67.     Until about 2000 the DOC maintained one or more records examiners in the Superior Court courthouse to process releases of court returns entitled to release so they could be released directly from the Superior Court or District Court instead of being returned to the DC Jail for out-processing (all releases from the DC Jail or CTF are processed by the Records Office and all persons released from CTF or the DC Jail pass through the DC Jail's R&D (Receiving and Discharge) post.

68.     But, because the Records Office became so inefficient and unreliable it could not process the daily stream of court returns entitled to release and the DOC had to start returning all court returns including court returns entitled to release back to the DC Jail for release processing.

69.     Returning court returns entitled to release to the DC Jail for processing causes two types of problems.

70.     One, it reduces the Records Office's ability to process releases because it burdens the system in the jail with inmates who should already have been released. This affects not only court returns entitled to release but all other persons in the DOC entitled to release.

12

71.     Two, it subjects court returns entitled to release to degrading and humiliating strip-searches because all persons committed to the DC Jail are (because of official written DOC policy) subjected to blanket (i.e., all persons regardless of suspicion) strip-searches even court returns entitled to release.

72.     In the Bynum Settlement (the class action settlement in Bynum v. District of Columbia, 02-956 (RCL), a class action brought against the District by persons who were over-detained and subjected to unconstitutional post release strip-searches, the District addressed some of these problems by agreeing to divert court returns entitled to release to a processing facility outside the DC Jail, the Medical Holding Unit or "MHU," where they could stay while the Records Office processed their entitlement to release to avoid burdening the DC Jail with the flow of court returns entitled to release (which affected the Records Office's capacity to process all releases) and so court returns entitled to release would not have to undergo strip-searches.

73.     The DOC also agreed to build a new Inmate Processing Center outside the DC Jail to process releases of court returns entitled to release so they would not have to reenter the DC Jail for out-processing.

74.     But, in practice, the DOC did neither. The DOC never built the Inmate Processing Center and the DOC only sporadically diverted court returns entitled to release to the MHU for release.

75.     In fact, in the first year after the Bynum Settlement, the DOC over-detained at least 1,244 court returns entitled to release who did not get released because the DOC could not process releases before 10:00 p.m.

76.     Because of a District of Columbia statute enacted by the D.C. Council in early 2000s, the DC Jail could not make releases after 10 pm (the 10 pm cut-off statute).

13

77.      A new class action was filed against the District by persons who were over-detained and subjected to unconstitutional post release strip-searches, Barnes v. District of Columbia, 06-315 (RCL).

78.      As a result of the Barnes case, the DOC began making courthouse releases of misdemeanor (and certain felony) releases and the DOC began diverting more court returns entitled to release to MHU for release processing.

79.      Judge Lamberth also declared the 10 pm cut-off statute unconstitutional and the DOC began making releases after midnight.

80.      For a certain period of time the over-detention and related strip-search problem was resolved.

81.      But, by 2013, the problem had returned.

### Snith v. District of Columbia and the District's system for handling court returns

82.      Discovery and the pleadings in the case of Snith v. District of Columbia, 15-161 (ABJ), illustrates the problems caused by the split system and its reliance of paper records which caused the overdetentions and strip-searches of Mr. Jones and the class members as well as the over-detention and strip-search of Mr. Smith.

83.      On March 18, 2014, Judge Juliet McKenna of the Superior Court ordered Mr. Gregory Smith to be released in the two cases on which he had been committed to the DC Jail.

84.      She issued two paper release orders.

85.      One was hand carried back to the Records Office in a matter of hours on the transport vehicle with Mr. Smith.

86.      Mr. Smith was not released at the courthouse nor was he diverted to MHU even though he had at least one release order.

14

87.     When Mr. Smith arrived at the R&D post in the DC Jail (all persons committed to the DOC are processed into the system in R&D which examines their commitment paperwork as they arrive), he told the R&D officers that he was entitled to release on both of his cases.

88.     The other release order did not arrive until 9:33 that night.

89.     R&D staff did not investigate his claims.

90.     Because they found only one release order they assumed per DOC policy that he was still subject to detention on his other case so they subjected him to a strip-search and retuned him to his cell.

91.     The Records Office processed one of his orders but not the other.

92.     As a result, because the DOC treats a court return coming back to the DC Jail without a release order as still subject to their original commitment, the Records Office continued to hold Mr. Smith.

93.     For some reason, even though the Records Office received the second order, the Records Office never processed it.

94.     As a result, Mr. Smith was over-detained for 23 days.

95.     The Records Office obviously did not do any quality assurance on Mr. Smith's release decision after March 18, 2014.

96.     If they had, a simple check of the CourtView system (the online CourtView system is the official docket of the Superior Court) would have revealed that he was entitled to release in both cases.

97.     The DOC never even discovered that he was over-detained even though Mr. Smith did not appear for an April 10, 2014 court appearance in one of the case.

15

98.     Moreover, the Records Office never reported the over-detention after it was discovered so it was not entered into the early warning system used to track over-detentions and their causes so the DOC can diagnose and correct problems in the system.

99.     The District's deliberate indifference to inmate's right to timely release is illustrated by how the District's implementation of its procedures disregard's inmate rights.

100.    The DOC is supposed to release court returns entitled to release from the courthouse or divert them to MHU. The DOC failed to implement its policy here.

101.    The DOC failed to promptly transport his release/ commitment orders to the Records Office. Sending orders electronically would have obviated this long standing problem of failing to promptly get release orders to the Records Office.

102.    Mr. Smith reported his right to release to R&D staff but they failed to investigate.

103.    The Records Office failed to check CourtView to see his release status in his order case.

104.    Most significantly and most indicative of a over-detention systemic problem is that a senior Records Office manager failed to make an over-detention report when the over-detention was discovered.

### Deliberate indifference to over-detentions

105.     Releasing inmates from custody within two hours from when they become entitled to release is the norm for any system of the District's size that places any weight on the inmate's interest in a prompt release.

106.    The DC jail is located at 1901 E Street, SE, Washington, DC 20003. The superior Courthouse is located at 555 Indiana Ave., N.W., Washington, DC 20001. According to Google's "get directions," the jail is 2.7 miles from the Superior Courthouse and the travel time is 10 minutes.

16

107.    According to DOC data since 2013 the inmate population has gone down almost every year since 2013 from 1718 inmates in 2013 to 1252 in 2016.

108.    The number of releases the DOC processes has gone down every year from 12,976 in 2013 to only 8,500 in 2016.

109.    The maximum number of court returns sent to court on any day is approximately 100 to 150 and of that number only about 10 percent become entitled to release as a result of their court events.

110.    A quick comparison with over-detention figures for the LA County Jail for similar periods underscores the point. The LA County Jail System is the largest in the country.

111.    The LA County Jail System books and releases about 200,000 individuals into the jail system in a given year (compared with the District's current 11277 or less) through its Inmate Reception Center. The Los Angeles County Sheriff's Department, 17th Semiannual Report, by Special Counsel Merrick J. Bobb and Staff and Police Assessment Resource Center (PARC), November 2003. ("17th Semiannual Report") http://file.lacounty.gov/lac/mbobb17.pdf.

112.    Every weekday nearly 1,300 inmates pass through the Inmate Reception Center from county facilities on their way to 12 Superior Court Districts and 49 courthouses in LA County (about the size of a small European country). 17th Semiannual Report, 17:72.

113.    On any given day, the District sends between 100 to 150 [2] court returns to two courthouses [3], the Superior Court house and the District Court courthouse, located across the

---

2 DOC newsletter.

3 The DC jail is located at 1901 E Street, SE, Washington, DC 20003. The superior Courthouse is located at 555 Indiana Ave., N.W., Washington, DC 20001. According to Google's "get

street from each other, 2.7 miles from the Superior Courthouse and the travel time is 10 minutes.

114.    The LA County Jail instituted a courthouse release program in May 2001, the "In-Court Release and Greenband Program."

115.    The following chart shows over detentions in the LA County Jail in the years 1997 to 2003:

| Year | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|---|
| Over detentions | 607 | 495 | 269 | 249 | 123 | 81 | 49 |

**Over-detention numbers for the DOC**

116.    Exact over-detention numbers for the DC Jail and CTF (Central Treatment Facility) and the Half Way Houses are not known to plaintiff without discovery.

117.    But, publically available figures and discussions with knowledgeable people such as CJA lawyers indicates that the DOC routinely holds detainees past their Release Times.

118.    First of all, the DOC has historically under-reported over-detentions even in its annual compliance reports to the Judiciary and Public Safety Committee of the D.C. Council which has oversight for the DOC.

119.    The DOC even under-reports over-detentions in litigation. See e.g., Smith v. District of

directions," the jail is 2.7 miles from the Superior Courthouse and the travel time is 10 min. http://maps.google.com/maps?hl=en&tab=wl (last checked 1/27/2011).

18

Columbia, 15-151 (DAR) [56] 12/6/2016 (District sanctioned for failing to disclose all over-detentions in response to non-objectionable discovery requests).

120.     The DOC reported about 12 over-detentions for 2013 to the D.C. Council for 2013 but this number is under-reported.

121.     The number of over-detentions the DOC ultimately disclosed to Mr. Smith is under seal and not known to Mr. Jones.

122.     In 2015 the DOC over-detained Mr. Smith for 23 days a length which indicates a severe problem in the Records Office.

123.     In 2016 the District over-detained Mr. Perrow for about 20 days again a length which indicates a severe problem in the Records Office.

124.     Most significantly and most indicative of a over-detention systemic problem is that a senior Records Office manager failed to make an over-detention report when Mr. Smith's over-detention was discovered.

125.     One of the key tools which the DOC and other jails use to prevent over-detentions is to report and track over-detentions so management can identify and fix problems that cause over-detentions (and the flip side of over-detentions, early releases).

126.     When senior supervisory staff in a Records Office fail to make reports is indicates a systemic problem.

<div align="center">Plaintiff Richard Jones' Overdetention by the DC Jail</div>

**Formatted:** Don't keep with next, Don't keep lines together, Tab stops: Not at  1"

127.   Without discovery Mr. Jones does not yet know why he was over-detained and strip-searched but the following facts are clear.

128.   On or about 12/7/15 Plaintiff Richard Jones, while in the custody of the DOC was sent to the federal courthouse for a hearing.

129.   Mr. Jones was ordered released but instead of being released from the courthouse or the MHU the DOC transported him to the DC Jail.

130.   At R&D Mr. Jones told the R&D staff that he was entitled to release but the R&D staff did not investigate his claim and hold him in the R&D holding area without a strip-search or send him to MHU during the investigation.

131.   Because they found no release order they assumed per DOC policy that he was still subject to detention on the case he went to court on so they subjected him to a strip-search and retuned him to his cell.

132.   They did not release him for several hours.

133.   Mr. Jones pleads in the alternative that he was held more than five hours before release after being transferred by the Marshals in the courthouse to the DOC transport officers.

134.   Plaintiff Jones has suffered damages as a result of the over detention.

### Plaintiff Richard Jones's Strip Search

135.   On 12/7/15 Plaintiff Richard Jones was taken to Court and the Judge ordered his release.

136.   Plaintiff Richard Jones was entitled to release on 12/7/15.

137.   But, instead of being released or diverted to the holding facility at MHU or released from the courthouse on 12/7/15, Plaintiff Richard Jones was returned to the DC Jail's general population and per official DOC policy he was subjected to a strip search and visual body cavity

search without any individualized finding of reasonable suspicion or probable cause that he was concealing contraband or weapons even though a court had ordered his release.

138.     Plaintiff Jones has suffered damages as a result.

139.     A DOC Sargent described the strip-searches performed on arrestees like Mr. Smith and Mr. Jones -- what the corrections officers call the "dance" -- as follows.

140.     The intake stands on a piece of green carpet in front of a long table, takes all their clothes off, and puts their clothes on the table.

141.     The guards rifle the hair, pull the ears back, and then open the mouth wide and lift the corners with their hands so that the guard can see left or right in the mouth.

142.     Then the intake lifts their arms in the air so the guard can see the arm pits and the backs of the arms.

143.     Next the male intake lifts his genitals so the guards can see underneath and in between the legs.

144.     A similar procedure is used for female intakes.

145.     "At that point, they'll turn around and bend over--and spread their buttocks with their hands. Once that's done then they lift up their back feet, one, two, [the "dance"] and it's over."

146.     In fact, cells were added at MHU as part of the settlement in Bynum v. District of Columbia, 02-956 (RCL) so that court returns entitled to release after their hearings at court could be held there while the DC Jail Records Office was administratively processing their releases.

## Substantive Allegations

### Claim 1

### Pattern and Practice § 1983 Liability of District of Columbia for Overdetentions

147.    The Overdetained Named Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint.

148.    The District of Columbia, and its agents and employees, have had a longstanding custom and practice of detaining people past their entitlement to release, thereby causing unjustified overdetention of the Overdetained Named Plaintiff and all other Over-detention class members.

149.    Court returns entitled to release such as Mr. Jones were entitled to release within two hours of receiving their court ordered releases and all inmates were entitled to release by 10 pm on their Release Dates.

150.    The District's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force behind the violations of the Overdetained Named Plaintiff and all other class members' Fourth and Fifth Amendment rights.

151.    The District was deliberately indifferent to their rights.

152.    Named Plaintiff Mr. Jones and all other class members' suffered thereby general damages such as loss of liberty and special damages such as emotional distress.

153.    Accordingly, Mr. Jones and all other class members are entitled to damages to be determined at trial.

### Claim 2

#### Liberty Interest § 1983 Liability of District of Columbia for Overdetentions

154.    The Overdetained Named Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint.

155.    Mr. Jones also brings the Over-detention Claim pursuant to the Due Process clause of the Fifth Amendment because the District of Columbia statutes create a liberty interest in release by 10 pm on the Release Date per D.C. Code § 24-201.06 and D.C. Code § 24-211.02a and for an

inmate ordered released pursuant to a court order within 5 hours of transfer from the custody of the United States Marshals Service into the custody of the Department of Corrections per D.C. Code § 24-211.02a.

156.    Named Plaintiff Mr. Jones and all other class members' suffered thereby general damages such as loss of liberty and special damages such as emotional distress.

157.    The DOC routinely held persons entitled to release longer than these deadlines.

158.    Holding persons past their statutorily created liberty interest deadlines violated their Fifth Amendment Rights and the District was the moving force behind the violations.

### Claim 3

### § 1983 Monell Liability of District for Illegal Strip Searches

159.    Mr. Jones the Strip Search Named Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint.

160.    The DOC has an official written policy of subjecting all inmates entering the DC Jail to tes without any finding of cause.

161.    The DOC applies the policy to all such persons even to court returns entitled to release.

162.    The DOC's policy as applied to court returns entitled to release was the moving force behind the violations of the Strip Search Named Plaintiff and the Strip Search Class members' Fourth and Fifth Amendment rights.

163.    Named Plaintiff Mr. Jones and all other class members' suffered thereby general damages such as loss of liberty and special damages such as emotional distress.

164.    Accordingly, Mr. Jones and the class are entitled to damages to be determined at trial.

### Claim 4

### Common Law Liability of District of Columbia for False Arrest

165.    The Overdetained Named Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint.

166.    The District of Columbia, and its agents and employees, held Mr. Jones and the over-detention class members past the time they were entitled to release.

167.    District's employees were acting within the scope of their employment at all times.

168.    The District is liable for the conduct of its employees in *respondeat superior*.

169.    The District's actions, and failure to act, as described above, were the proximate cause of the Overdetained Named Plaintiff and all other class members' common law rights to be free from false arrest and cause them general damages such as loss of liberty and special damages such as emotional distress.

170.    Accordingly, Mr. Jones and all the other Over-detention class members are entitled to damages to be determined at trial.

<div align="center">

Claim 5

Common Law Liability of District for Illegal Strip Searches

</div>

171.    Mr. Jones the Strip Search Named Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint.

172.    The conduct of the DOC employees in enforcing the District's policy of strip-searching all persons entering the DC Jail as applied to court returns entitled to release violated their common law right to privacy.

173.    The District's actions, and failure to act, as described above, were the proximate cause of the Strip Search Named Plaintiff and the Strip Search Class members' common law privacy rights.

174.    The District's employees were acting within the scope of their employment at all times.

175.    The District is liable for the conduct of its employees in *respondeat superior*.

176.    Named Plaintiff and all other class members' suffered thereby general damages such as loss of liberty and special damages such as emotional distress.

177.    Accordingly, Mr. Jones and all the other Strip-search class members are entitled to damages to be determined at trial.

**Class Action Allegations**

8.178.  The Overdetained Named Plaintiff bring this action under Rules 23(a), 23(b) (2), of the Federal Rules of Civil Procedure on behalf of a class consisting of: (a) Each person who has been, is, or in the future will be incarcerated in any District of Columbia Department of Corrections facility from August 1, 2013 forward; and (b) who was not released, or, in the future, will not be released by midnight10 pm on the date on which the person is entitled to be released by court order or the date on which the basis for his or her detention has otherwise expired (or within two hours of being ordered released or otherwise becoming entitled to release if the person was a court return).

9.179.  The Strip Search Named Plaintiff also bring this action under Rules 23(a), 23(b) (2) of the Federal Rules of Civil Procedure on behalf of a class consisting of each member of the class who was, or in the future will be, from August 1, 2013, forward: (i) in the custody of the Department of Corrections; (ii) taken to court from a Department of Corrections facility; (iii) ordered released by the court or otherwise became entitled to release by virtue of the court appearance because the charge on which he had been held was no longer pending or was dismissed at the hearing, was ordered released on his own recognizance, or had posted bail, was sentenced to time served, was acquitted or was otherwise entitled to release; (iv) was not the subject of any other pending case or cases which imposed any condition of release other than personal recognizance; (v) was not the subject of any detainer or warrant; (vi) was returned from court to the DC Jail or CTF or other

25

District facility, to be processed out of Department of Corrections custody; and (vii) was subjected to a strip search and/or visual body cavity search without any individualized finding of reasonable suspicion or probable cause that ~~he was~~they were concealing contraband or weapons; before being released, regardless of whether ~~he was overdetained.~~they were over-detained. The Strip-search class does not include for the same strip-search any person who meets the strip-search class definition in Lewis v. District of Columbia, 15-352 (RBW).

~~10.~~180.Certification of these two classes under Federal Rule of Civil Procedure 23(b)(2) is

Formatted: Don't keep with next

appropriate, because the District of Columbia has a pattern and practice that has uniformly affected all members of both classes, and injunctive relief against the District will benefit each and every plaintiff and class member. Although the District had agreed to stop these practices, and indeed had done so in the context of the settlement of Bynum v. District of Columbia, Civil Action No. 02-956 (RCL) and Barnes v. District of Columbia, 06-315 (RCL), the practices stop have not stopped based on public filings and discussions with attorneys practicing in the District courts.

~~11.~~181.The classes are entitled to injunctive relief on their § 1983 claims, for example, setting up an independent monitor to supervise the Department of Corrections' inmate management system to ensure that all inmates are released on or before their release dates, and other relief as specified below.

~~12.~~182.Regarding the Overdetained Named Plaintiff, and members of the class, there are no

Formatted: Don't adjust space between Latin and Asian text, Don't adjust space between Asian text and numbers

individual questions on the issue of liability other than whether an individual has been overdetained, and the answer to that question can be determined by ministerial inspection of the Department of Corrections' records.

26

13.183.Computer records and DOC over-detention reports are available for inspection on the overdetentions and the strip-searches.

14.184.Regarding the Strip Search Named Plaintiff, and members of the Strip Search Class, there are no individual questions on the issue of liability, because neither the DC Jail nor CTF keeps records of the searches and therefore neither the DC Jail nor CTF can show that any of the searches were conducted based on an individual determination of reasonable suspicion.

15.185.Among the questions of law and fact common to the classes are:

a)     whether the Constitution provides a maximum length of time measured in hours beyond which the District cannot hold a person to perform administrative tasks incident to release before releasing that person from jailcustody after the basis for detention is over;

a)b)    Whether DC statutes create liberty interests entitling inmates to release by 10 pm of their Release Dates or for an inmate ordered released pursuant to a court order within 5 hours of transfer from the custody of the United States Marshals Service into the custody of the Department of Corrections.

b)c)    whether the District has exceeded that maximum for each class member;

c)d)    whether the District has a pattern and practice of holding detainees and inmates past their release dates;

d)e)    whether the District has a pattern and practice of being deliberately indifferent to the rights of detainees and inmates by holding them past their release dates;

e)f)    whether the District's acts as alleged herein violate the Constitution of the United States by holding detainees and inmates past their release dates;

f)g)    whether the District has a policy of and practice of subjecting persons to blanket strip searches and visual body cavity searches after they have become entitled to release;

g)h)    whether such policy, if found to exist, violates the Fourth and/or Fifth Amendments; and.

h)    whether plaintiffs and the members of the Overdetention Class and the Strip Search Class and future members are entitled to equitable relief, and, if so, what is the nature of that relief.

16.186.Each of the Overdetention Class and the Strip Search Class is so numerous that joinder of all members is impracticable.  The exact number of Overdetention Class and Strip Search Class members is unknown to plaintiffs at this time, but is likely to consist of at least one hundred people, and likely substantially more than that.

17.187.The Overdetained Named Plaintiff' claims are typical of the claims of the other members of the class, as plaintiffs and all other members of the class were injured by exactly the same means, that is, by the overdetentions.

18.188.The Strip Search Named Plaintiff' claims are typical of the claims of the other members of the Strip Search Class, as the Strip Search Named Plaintiff and all other members of the Strip Search Class were injured by exactly the same means, that is, by the blanket strip searches.

19.189.The Overdetained Named Plaintiff and the Strip Search Named Plaintiff will fairly and adequately protect the interests of the members of the Overdetention Class and Strip Search Class

28

**Formatted:** Don't adjust space between Latin and Asian text, Don't adjust space between Asian text and numbers

and have retained counsel who are competent and experienced in complex federal civil rights class action litigation and/or complex federal prisoner rights litigation.

20.190. The Overdetained Named Plaintiff and Strip Search Named Plaintiff have no interests that are contrary to or in conflict with those of the class or Strip Search Class.

<div align="center">Parties</div>

21.     Plaintiff Richard Jones held past his Release Date at the DC Jail and was strip searched without reasonable suspicion after being ordered to be released from custody.

22.1.    The District Government of the District of Columbia (hereinafter the District of Columbia or the District) is a municipal corporation capable of being sued under D.C. Code § 1-102.

<div align="center">FACTUAL ALLEGATIONS</div>

<div align="center">Components of the Department of Corrections</div>

23.1.    The District of Columbia Department of Corrections holds prisoners committed by the District of Columbia Superior Court, the District of Columbia District Court, and other agencies, in the Central Detention Facility ("DC Jail"), the Correctional Treatment Facility ("CTF") and at various halfway houses located in the District of Columbia.

24.     Most prisoners held in the custody of the Department of Corrections are either pre-trial detainees, misdemeanants serving sentences, or parole and probation violators.

<div align="center">The Inmate Management System</div>

25.1.    The records office located at the DC Jail ("Records Office") is responsible for administering and maintaining the records, including the judgment and commitment files, of all persons housed at the DC Jail, CTF and the halfway houses.

<div align="center">29</div>

~~26. The Records Office is responsible for ensuring that all persons housed at the DC Jail, CTF and the halfway houses are released according to their Release Dates specified in their court orders.~~

~~27. The District of Columbia Superior Court enforces a policy pursuant to which an in-custody defendant or a defendant ordered into custody may not leave the courtroom without an order (commitment order or release order) for each case on which he appeared.~~

**~~The Overdetention Problem~~**

~~28. "Overdetain" means holding a detainee or prisoner in Department of Corrections' custody past the person's release date.~~

~~29.1. "Release Date" for each detainee or inmate is the day on which the person is entitled to be released by court order or the date on which the basis for his or her detention has otherwise expired.~~

~~30.1. "Exit Date" for each detainee or inmate is the day on which the person is actually released from the custody of the District of Columbia Department of Corrections.~~

~~31. The Department of Corrections had a long and documented history of overdetaining detainees and inmates past their release dates.~~

~~32. The Department of Corrections, in response to a class action lawsuit, instituted reforms that ameliorated and for periods eliminated the overdetention problem.~~

~~33.1. However, on information and belief, and based on publically available filing, the Department of Corrections has again begun overdetaining large numbers of inmates.~~

**~~The Court Return Strip Search Problem~~**

~~34.1. Prior to late 2000 or early 2001, the Department of Corrections followed a practice under which most inmates taken from custody of the Department of Corrections to court and ordered~~

**Formatted:** Font: Bold, No underline

**Formatted:** Don't keep with next, Don't keep lines together

**Formatted:** No widow/orphan control, Don't keep lines together, Tab stops: 0.5", List tab + Not at 0.25"

**Formatted:** No widow/orphan control, Don't keep lines together, Tab stops: 0.5", List tab + Not at 0.25"

**Formatted:** Font: Bold, No underline

**Formatted:** Don't keep lines together

**Formatted:** No widow/orphan control, Tab stops: 0.5", List tab + Not at 0.25"

released by a judicial officer because the charge was no longer pending or because of a change in conditions of release was returned to the DC Jail or CTF for processing for release rather than being released from the courthouse.

35.1.   In late 2000 or early 2001, the Department of Corrections instituted a policy under which every inmates taken from custody of the Department of Corrections to court and ordered released by a judicial officer because the charge was no longer pending or because of a change in conditions of release was returned to the DC Jail or CTF for processing for release rather than being released from the courthouse.

36.   In August 2005 the Department of Corrections instituted a policy of diverting in-custody defendants ordered released or otherwise entitled to release from the Superior Court of the District of Columbia to a holding facility on the grounds of DC General Hospital where they would not be subject to a strip search, absent individualized suspicion, while the record review for detainers and warrants and property retrieval was conducted prior to release.

37.1.   However, the Department of Corrections has been returning some in custody defendants entitled to release from the courthouses to the DC Jail or CTF and subjecting them to strip searches after a judge has ordered their release without a finding of individual reasonable suspicion.

38.1.   The DOC is supposed to make releases from the courthouses but it does not reliably do so.

39.   The exact cause of the recent overdetentions and illegal court return strip searches is not known, but the causes, on information and belief, include recurring problems with the DC Jail's computerized inmate population accounting system and the Records Office.

### Plaintiff Richard Jones' Overdetention by the DC Jail

31

40.1.   On or about 12/7/15 Plaintiff Richard Jones, while in the custody of the DOC was sent to the federal courthouse for a hearing.

41.   Mr. Jones was ordered released but instead of being released from the courthouse or the MHU the DOC transported him to the DC Jail and did not release him for several hours.

42.1.   Plaintiff Jones has suffered damages as a result of the over detention.

**Plaintiff Richard Jones's Strip Search**

43.1.   On 12/7/15 Plaintiff Richard Jones was taken to Court and the Judge ordered his release.

44.1.   Plaintiff Richard Jones was entitled to release on 12/7/15.

45.1.   But, instead of being released or diverted to the holding facility at DC General or released from the courthouse on 12/7/15, Plaintiff Carl A. Barnes was returned to the DC Jail's general population and subjected to a strip search and visual body cavity search without any individualized finding of reasonable suspicion or probable cause that he was concealing contraband or weapons even though a court had ordered his release.

46.1.   Plaintiff Jones has suffered damages as a result.

**Substantive Allegations**

**Claim 1**

**§ 1983 Liability of District of Columbia for Overdetentions**

47.   The Overdetained Named Plaintiff reallege and incorporate by reference all allegations set forth in this Complaint.

48.   The District of Columbia, and its agents and employees, have had a ongstanding custom and practice of detaining people past their release dates, thereby causing unjustified overdetention of the Overdetained Named Plaintiff and all other class members.

49. The District's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force behind the violations of the Overdetained Named Plaintiff and all other class members' Fourth, Fifth and Eighth Amendment rights.

50.1. The District was deliberately indifferent to their rights.

51. Accordingly, all Named Plaintiffs are entitled to damages to be determined at trial, and the Overdetention Class is entitled to injunctive relief.

Claim 2

§ 1983 Custom and Practice Liability of District for Illegal Strip Searches

52. Mr. Jones the Strip Search Named Plaintiff realleges and incorporate by reference all allegations set forth in this Complaint.

53. The District's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force behind the violations of the Strip Search Named Plaintiff and the Strip Search Class members' Fourth and Fifth Amendment rights.

54.1. The District was deliberately indifferent to their rights.

55. Accordingly, Mr. Jones is entitled to damages to be determined at trial, and the Strip search Class is entitled to injunctive relief.

Claim 3

Common Law Liability of District of Columbia for False Arrest

56. The Overdetained Named Plaintiff realleges and incorporate by reference all allegations set forth in this Complaint.

57. The District of Columbia, and its agents and employees, have had a longstanding custom and practice of detaining people past their release dates, thereby causing unjustified overdetention of the Overdetained Named Plaintiff and all other class members.

33

~~58.1.    District's employees were acting within the scope of their employment at all times.~~

~~59.1.    The District is liable for the conduct of its employees in *respondeat superior*.~~

~~60.    The District's actions, and failure to act, as described above, were the proximate cause of the Overdetained Named Plaintiff and all other class members' common law rights to be free from false arrest.~~

~~61.    The District is liable for the conduct of its employees in respondeat superior.~~

~~62.    The District was deliberately indifferent to their rights.~~

~~63.    Accordingly, all Named Plaintiffs are entitled to damages to be determined at trial.~~

~~Claim 4~~

~~Common Law Custom and Practice Liability of District for Illegal Strip Searches~~

~~64.    Mr. Jones the Strip Search Named Plaintiff realleges and incorporate by reference all allegations set forth in this Complaint.~~

~~65.1.    The District's actions, and failure to act, as described above, were the proximate cause of the Strip Search Named Plaintiff and the Strip Search Class members' common law privacy rights.~~

~~66.1.    The District's employees were acting within the scope of their employment at all times.~~

~~67.1.    The District is liable for the conduct of its employees in *respondeat superior*.~~

~~68.    Accordingly, Mr. Jones is entitled to damages to be determined at trial.~~

**Prayer ~~For~~for Relief**

WHEREFORE, plaintiffs respectfully request that this Court grant the following relief:

1.    grant a jury trial on all claims so triable;

        2.      award all named plaintiffs compensatory and consequential damages in an amount to be determined at trial;

        3.      award plaintiffs attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 1988; and

        4.      grant such other relief as this Court deems just and proper.

35

Respectfully submitted,


~~_____/sig/_____~~
/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579

~~2020 Pennsylvania Ave., N.W., Ste 395~~
717 D Street, NW
Ste 300
Washington, DC 20006
202-824-0700


**Jury Demand**

Plaintiffs demand a jury of six as to all claims so triable.


~~_____/sig/_____~~
/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for the Overdetained Named Plaintiff and
Strip Search Named Plaintiff and the classes

36