UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD JONES, *et al.*,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA,

    *Defendant.*

Civil Action No. 16-cv-2405 (DLF)

## MEMORANDUM OPINION

The plaintiff Richard Jones asserts several claims against the District of Columbia stemming from his alleged overdetention and strip search. Before the Court is the District's Motion to Dismiss the First Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, the Court grants in part and denies in part the District's motion to dismiss.

## I. BACKGROUND

On December 7, 2015, Jones attended a hearing at the federal courthouse and was ordered released from the custody of the Department of Corrections. First Amended Compl. ¶¶ 128, 129, 135, Dkt. 12. Following the hearing, the Marshals transferred Jones to Department of Corrections staff who then transported Jones to the D.C. Jail. *Id.* At the D.C. Jail, Jones allegedly told the receiving and discharge staff that he had been ordered released, but the staff could not find a release order. *Id.* ¶¶ 130, 131. Thus, staff subjected Jones to a strip-search and returned him to his cell in the general population. *Id.* ¶¶ 130, 131, 137. Jones alleges that he was held in the D.C. Jail for several hours. *Id.* ¶¶ 132. In the alternative, Jones alleges that he was

held more than five hours from the moment the Marshals transferred him to the Department of Corrections transport officers at the federal courthouse. *Id*. ¶ 133.

Jones further alleges that the Department of Corrections "routinely" and "systematically" holds detainees past their release times. *Id*. ¶¶ 13, 117. In particular, Jones claims that the Department of Corrections' practice of not releasing inmates until it obtains inmates' paper release dispositions leads to the unconstitutional overdetention of individuals who have been ordered released. *Id.* ¶ 41. Jones also contends that the Department of Corrections "does not reliably" follow its own policy that requires transporting defendants who have been ordered released to D.C. General Hospital where they are not subjected to strip searches, absent individualized suspicion. *Id*. ¶ 37.

Jones asserts constitutional claims based on his overdetention and strip search. Additionally, he asserts common law claims for false arrest and invasion of privacy.

## II. LEGAL STANDARD(S)

In evaluating a motion to dismiss, the Court must treat the complaint's "factual allegations as true and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Center for Responsible Science v. Gottlieb*, 311 F. Supp. 3d 5, 8 (D.D.C. 2018) (internal quotation marks and alterations omitted). "The Court need not accept as true, however, a legal conclusion couched as a factual allegation, nor an inference unsupported by the facts set forth in the Complaint." *Id*. (internal quotation marks omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

2

defendant is liable for the misconduct alleged. *Id*. (internal citation omitted). A "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*.

Here, Jones attempts to state several claims for municipal liability. To determine whether Jones has stated a claim, the Court must conduct a two-step inquiry: "First, the court must determine whether the complaint states a claim for a predicate constitutional violation. Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (internal citations omitted).

## III. ANALYSIS

Jones argues that his overdetention and strip search violated his Fourth and Fifth Amendment rights.[1] He also asserts common law claims for false arrest and invasion of privacy.

### A. Constitutional Claims Stemming from Jones's Overdetention

Jones first argues that his overdetention constituted an unreasonable seizure under the Fourth Amendment. The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure triggering the Fourth Amendment's protections occurs when a person's freedom of movement is terminated or restrained, either by physical force or a show of authority." *See Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 273-74 (D.D.C. 2011) (internal quotation marks omitted). But here, Jones was already in custody when he was ordered

---

[1] In the motion to dismiss, the District argues that Jones has failed to state a claim sufficient to establish an Eighth Amendment violation. Jones clarified in his opposition that he did "not plead an Eighth Amendment over-detention claim in the First Amended Complaint." Pl.'s Opp'n at 1, n.1, Dkt. 18.

3

released. In other words, Jones's "freedom of movement had already been terminated." *Id*. (internal citations omitted). And Jones did not allege or provide any factual support in his complaint suggesting that his overdetention involved a fresh seizure, which would warrant a Fourth Amendment analysis. *See id*. Moreover, "[m]ost courts that have considered overdetention claims have agreed that they are properly channeled through the Due Process Clause" of the Fifth and Fourteenth Amendments." *Barnes v. District of Columbia*, 242 F.R.D. 113, 118 (D.D.C. 2007). For these reasons, the Court will grant the District's motion to dismiss as to Jones's claim that his overdetention constituted an unreasonable seizure under the Fourth Amendment.

Jones next argues that his overdetention violated his substantive due process right under the Fifth Amendment.[2] The "doctrine of substantive due process constrains only egregious government misconduct" and prevents "only grave unfairness." *George Washington University v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003) (internal quotation marks omitted). A plaintiff can show grave unfairness in two ways. The plaintiff can either show that there was (i) "a substantial infringement of state law prompted by personal or group animus, or (ii) "a deliberate flouting of the law that trammel[ed] significant personal or property rights." *Id*. (internal quotation marks and citations omitted).

An overdetention of the kind that Jones alleges potentially violates "the substantive component of the Due Process Clause by infringing upon an individual's basic liberty interest in being free from incarceration absent a criminal conviction." *Barnes v. District of Columbia*, 793

---

[2] Jones asserts that he has stated "a claim for a predicate constitutional violation of his procedural due process claim." Pl.'s Opp'n at 19, Dkt. 18. But Jones does not identify any specific procedure that he should have received, and he characterizes the District's violation as an infringement of his "liberty interest." That language suggests that substantive due process protections are a better fit for Jones's Fifth Amendment claim.

4

F. Supp. 2d 260, 274-75 (D.D.C. 2011) (internal citation omitted). But temporarily "retaining custody over an inmate who is entitled to release in order to accomplish administrative tasks incident to that release is not per se unconstitutional." *Id*. at 275 (internal citation omitted). There is no established "bright-line rule for the maximum permissible delay in the overdetention context." *Barnes*, 793 F. Supp. 2d at 275 (internal citation omitted). Nonetheless, "courts appear to agree that the maximum permissible administrative delay in the overdetention context likely falls well short of the 48-hour horizon set out" for detentions pending probable cause determinations after warrantless arrests." *Id*. at 276 (internal citations omitted).

Here, the District asks the Court to decide that certain delays, at least those for only a few hours, are per se reasonable. "Yet it remains the case that courts have not settled on any concrete number of permissible hours of delay in the context of post-release detentions." *Barnes v. District of Columbia*, 242 F.R.D. 113, 117 (D.D.C. 2007) (internal quotation marks omitted). Indeed, "the great weight of precedent suggests that release must occur within a matter of hours after the right to it accrues, and that after some period of hours – not days – a presumption of unreasonableness, and thus unconstitutionality, will set in." *Id*. At the motion to dismiss stage, the Court cannot say that an overdetention lasting more than five hours is per se constitutional. Jones has, therefore, stated a claim for a predicate constitutional violation.

To state a claim for municipal liability, Jones also must state a claim that a custom or policy of the municipality caused the predicate constitutional violation. Jones's complaint also satisfies that burden. "There are four basic categories of municipal action" that Jones "may rely on to establish municipal liability: (1) express municipal policy; (2) adoption by municipal policymakers; (3) custom or usage; and (4) deliberate indifference." *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133 (D.D.C. 2011). Jones identifies a practice or custom that

5

led to his overdetention: he argues that the "cause of the over-detentions and illegal post release strip searches of court returns entitled to release was and remains the District of Columbia's maintaining a release system in the" Department of Corrections that "delays all releases." Compl. ¶ 14, Dkt. 12.  Specifically, Jones alleges that the Department of Corrections "runs a paper system for tracking cases and releases and misplaces jackets, misfiles orders, and runs the system manually.  The inefficient implementation of the District's release procedures is the result of official acquiescence in a longstanding practice or custom which constitutes the standard" operating procedure of the District.  *Id*. ¶ 19.

In short, Jones has stated a claim that the District's release-processing system delays the release of individuals and leads to overdetention.  Accordingly, the Court denies the District's motion to dismiss as to Jones's claim that his overdetention violated his rights under the Fifth Amendment.

### B.  Constitutional Claims Stemming from Jones's Strip Search

Next, Jones argues that the strip search conducted before Jones was returned to his cell violated his Fourth and Fifth Amendment rights.

According to Jones, strip searching an inmate who has been ordered released before returning that inmate to the general population violates the Fourth Amendment unless the corrections officials have individualized, reasonable suspicion to search the inmate.  That argument is belied by D.C. Circuit and Supreme Court precedent.

In *Bell v. Wolfish*, the Supreme Court established a balancing test for courts to use when evaluating the reasonableness of inmate searches:  Courts must balance "the need for the particular search against the invasion of personal rights that the search entails." 441 U.S. 520, 559 (1979).  "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *Id*.  The D.C.

Circuit has concluded that "nothing in *Bell* requires individualized, reasonable suspicion before strip searching a person entering a detention facility." *Bame v. Dillard*, 637 F.3d 380, 386 (D.C. Cir. 2011). And indeed, the Supreme Court has stated that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. Of Chosen Freeholders of Burlington*, 566 U.S. 318, 328 (2012). The Supreme Court has even recognized the importance of allowing across-the-board searches because "deterring the possession of contraband depends in part on the ability to conduct searches without predictable exceptions." *Id*. at 327-28. The Supreme Court concluded that prison officials have "a substantial interest in preventing any new inmate . . . from putting all who live or work at these institutions at even greater risk when he is admitted to the general population." *Id*. at 333-34.

Here, the District does not argue that it had individualized, reasonable suspicion to search Jones. Instead, the District argues that whenever a prisoner enters "the general population from the outside" prison officials need to conduct a search to bar "potential contraband from entry into the prison population." Def's Mot. at 16, Dkt. 17. The Supreme Court recognized that rationale as legitimate: prison officials have "a substantial interest in preventing any new inmate . . . from putting all who live or work at these institutions at even greater risk when he is admitted to the general population." *Florence*, 566 U.S. at 333-34. Prison officials do not need individualized reasonable suspicion to conduct a routine search before placing an inmate into the prison population.

Joints argues that this Court should follow the approach adopted in *Barnes v. District of Columbia*. In *Barnes*, the plaintiffs also challenged the strip search policy of the District. There, the district court denied the District's motion to dismiss. *See* 242 F.R.D. 113 (D.D.C. 2007).

Later, the district court granted the plaintiff's motion for summary judgment because "the utter lack of a reasonable justification for the blanket strip searches of court returns" mandated a finding that the "blanket strip search policy, as applied to court returns entitled to release, is unreasonable and violates the Fourth Amendment." *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 290 (D.C. Cir. 2011). But here, the District has offered a justification for the search by arguing that strip searches of individuals who are going to join the prison population are necessary to bar contraband from entry into the prison. More importantly, *Barnes* was decided before the Supreme Court and the D.C. Circuit clarified the standards that govern inmate searches. *See Florence*, 566 U.S. 318; *Bame*, 637 F.3d 380. Those later cases make clear that prison officials generally do not need individualized, reasonable suspicion to search individuals before they join the prison population.

Moreover, even if Jones were correct that the strip search violated his rights under the Fourth Amendment, Jones has not alleged that a custom or policy of the District caused the strip search. In fact, Jones alleges that the District's official policy is to divert defendants that have been ordered released "to a holding facility on the grounds of DC General Hospital . . . where they would not be subject to a strip search, absent individualized suspicion." Compl. ¶ 35, Dkt. 12. Jones, therefore, has not alleged that an express policy or a custom or practice led to his strip search. Thus, the Court grants the District's motion to dismiss as to Jones's claim that the strip search violated the Fourth Amendment.

Jones's Fifth Amendment claim also fails: "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266 (1994). The Fourth

Amendment is the explicit textual source of constitutional protection against unreasonable searches. Therefore, the Court grants the District's Motion to Dismiss as to the plaintiff's claim that the strip search violated his Fifth Amendment rights.

### C. Common Law Claims

Finally, Jones argues that his overdetention and strip search violated the common law torts of false arrest and invasion of privacy.

First, Jones argues that his overdetention constituted false arrest or false imprisonment.[3] "The gist of any complaint for false arrest or false imprisonment is an unlawful detention." *Dingle v. District of Columbia*, 571 F. Supp. 2d 87, 95 (D.D.C. 2008). "In order to support a viable claim of false arrest, a plaintiff must allege that he was unlawfully detained." *Dingle*, 571 F. Supp. at 95. The common law "cause of action for false arrest is essentially identical to a cause of action for false arrest under the Fourth Amendment." *Maldonado v. District of Columbia*, 924 F. Supp. 2d 323, 330 n.6 (D.D.C. 2013). Therefore, the Court analyzes Jones's common law claim in much the same way as it analyzes Jones's Fourth Amendment claim. Jones's Complaint does not contain allegations that he was newly arrested after the court ordered Jones's release. Therefore, the Court grants the District's motion to dismiss as to Jones's claim for false imprisonment or false arrest.

Second, Jones argues that his strip search violated his "common law right to privacy." Compl. ¶ 172, Dkt. 12. An invasion of privacy cause of action may be based on the intrusion upon one's physical solitude or seclusion." *Harris v. Department of Justice*, 600 F. Supp. 2d 129, 135 (D.D.C. 2009). "The tort of intrusion upon seclusion has three elements: (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing,

---

[3] "There is no real difference as a practical matter between false arrest and false imprisonment." *Barnhardt v. District of Columbia*, 723 F. Supp. 2d 197, 214 (D.D.C. 2010).

9

or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself; or into his private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person." *Helton v. United States*, 191 F. Supp. 2d 179, 181 (D.D.C. 2002) (internal quotation marks omitted). Here, for the reasons discussed above, it is not unreasonable for the District to conduct strip searches of individuals before they enter the general prison population. Jones did not have a reasonable expectation of privacy upon his reentry to the general population at the D.C. Jail and thus has not satisfied the third element of the tort of intrusion upon seclusion. The Court grants the District's motion to dismiss as to Jones's common law claim for invasion of privacy.

**CONCLUSION**

For the foregoing reasons, the Court denies in part and grants in part the District's motion to dismiss. Specifically, Counts 3, 4, and 5 are dismissed for failure to state a claim. Counts 1 and 2 survive insofar as they allege that the District violated Jones's rights under the Fifth Amendment by continuing to detain Jones after a court ordered Jones's release. Jones's claim that the District violated his rights under the Fourth Amendment by overdetaining him is dismissed. Jones's Motion for Leave to File supplemental authorities is denied as moot. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

Date: August 22, 2018